**[ORAL ARGUMENT NOT SCHEDULED]**

No. 25-5452

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

In re DONALD J. TRUMP, in his official capacity, et al.,

Petitioners.

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia
Case No: 1:25-cv-00766-JEB

**NOTICE OF DISTRICT COURT ORDERS**

The Government respectfully provides notice that the district court has issued an order, attached, denying the Government's motion for reconsideration or in the alternative for a protective order. *See* ECF 208. In an unreasoned minute order, the district court also denied the Government's motion for a stay pending this Court's resolution of its mandamus petition. These orders together confirm that the hearing set for Monday morning will proceed, and underscores both the need and the warrant for the emergency relief that the Government has sought in this Court.

The district court's order denying reconsideration does not remotely explain why the court has the authority to investigate criminal *mens rea* at all, let alone why it now needs live testimony to make a criminal referral when the court already found

1

probable cause for criminal contempt many months ago. Instead, the district court merely says there is allegedly "significant new information"—in the form of the whistleblower complaint containing privileged attorney-client communications—that supposedly supports finding willfulness. But the district court *already found* probable cause on the willfulness element, even in the absence of this "significant new information." Indeed, the district court concluded eight months ago that "there is probable cause that Defendants willfully disobeyed a binding judicial decree." ECF 81 at 41-43. At this point, the district court is free to refer the matter for potential prosecution if it continues to stand by its flawed legal analysis in the face of Judge Katsas's comprehensive destruction, but the court has no constitutional or legal authority to continue to conduct his own criminal inquisition.

On the privilege issue too, the court's latest order only highlights the threat. Without even waiting for a response from the Government, the district court has apparently agreed with Plaintiffs that "to the extent that future contempt was being considered, the crime-fraud exception would vitiate any privilege." ECF 208 at 3. That simultaneously exposes the lack of genuine need for this hearing and the danger posed by allowing it to continue. Moreover, the district court also flagged that there are "numerous reasons why the privilege might well not apply." *Id.* Yet the court has refused to address the privilege issues with any specificity in advance of the hearing, or adopt any protocol to ensure that those disputes can be meaningfully

2

adjudicated with an opportunity for appellate review. That makes it all but certain that the district court will override the privilege in real-time with government lawyers on the stand, during cross-examination by opposing counsel. That poses a serious threat of chaos, conflict, and irreparable harm.

Finally, the district court's latest order reveals yet again that this judge has personally invested himself to a degree that is irreconcilable with serving as a neutral adjudicator. The order begins by claiming—based on extra-record press accounts—that the removed aliens faced "abuse and possible torture" in El Salvador. ECF 208 at 1. It then once again offers a revisionist account of the court's TRO, claiming that it ordered "that they should not be disembarked" when it said nothing of the sort. *Id.* And it insists that Plaintiffs and their ACLU counsel "are uniquely positioned to assist the Court" and will be permitted to do so (*id.* at 2), despite the serious due-process concerns and supporting authority that Defendants repeatedly raised, and the spectacle that Plaintiffs' counsel have transparently admitted they intend to create.

At this point, it could hardly be clearer that both a stay and reassignment are necessary. This proceeding must be halted before the situation deteriorates further.

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney General*

 *s/ Tiberius Davis*
TIBERIUS DAVIS
  *Counsel to the Assistant Attorney General*

  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202)-514-4357

# CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.

*s/ Tiberius Davis*
TIBERIUS DAVIS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **J.G.G.,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DONALD J. TRUMP,** *et al.*, <br><br> Defendants. | Civil Action No. 25-766 (JEB) |

**ORDER**

On December 8, 2025, the Court ordered that live witness testimony would be warranted in its inquiry into whether a contempt referral is appropriate. See ECF No. 200 (Order). The Government now moves for reconsideration, asking the Court not to conduct such hearing or, alternatively, to greatly restrict testimony. See ECF No. 201 (Recon. Mot.). The Court will deny the Motion.

To begin, this inquiry is not some academic exercise. Approximately 137 men were spirited out of this country without a hearing and placed in a high-security prison in El Salvador, where many suffered abuse and possible torture, despite this Court's order that they should not be disembarked. See ECF No. 81 (Mem. Op.); Hum. Rts. Watch, "You Have Arrived in Hell": Torture and Other Abuses Against Venezuelans in El Salvador's Mega Prison (2025), https://perma.cc/8H6N-MJX4. The question the Court must now answer is whether this occurred via contumacious conduct by Government officials. See United States v. Young, 107 F.3d 903, 907 (D.C. Cir. 1997) (setting out elements including willfulness).

The *en banc* D.C. Circuit has authorized this Court to proceed with its contempt inquiry, see J.G.G. v. Trump, 2025 WL 3198891, at *4 (D.C. Cir. Nov. 14, 2025) (*en banc*) (Pillard,

1

Wilkins, and Garcia, JJ., respecting denial of rehearing *en banc*) (district court may "proceed . . . within his sound discretion" to obtain factual information); id. at *5 n.1 (Pan, J., dissenting from denial of rehearing *en banc*) ("Six of the eleven active judges on this court opine that the district court did not err."), which requires a consideration of officials' state of mind. The cursory declarations Defendants have provided, see ECF Nos. 198-1 (Declaration of Secretary Noem); 198-2 (Declaration of Acting General Counsel of DHS Mazzara); 198-3 (Declaration of Deputy Attorney General Blanche); 199 (Declaration of Emil Bove), offer little to assist such consideration. The Circuit has also vacated this Court's prior probable-cause determination. See J.G.G. v. Trump, No. 25-5124 (D.C. Cir. Aug. 8, 2025) (order vacating contempt-related order). Although this does not compel the Court to return to square one, it must reach a fresh conclusion. This is particularly warranted where significant new information — in the form of Erez Reuveni's whistleblower complaint, see ECF No. 158-1 (Letter) — has come to light since the Court's probable-cause finding. Much of his account bears directly on the question of willfulness. In addition, given their close familiarity with the case, Plaintiffs are uniquely positioned to assist the Court, and it will permit them to do so. (They would, conversely, have no role were an actual contempt prosecution initiated following a potential referral from this Court.)

      While the Government also asserts that the Court's inquiry should be cabined to March 15, that is too restrictive. What occurred at the March 14 meeting with Department of Justice attorneys (including Emil Bove, Erez Reuveni, and Drew Ensign), for example, may well help to illuminate officials' decisions the next day and their mental states. Nor would everything said at such meeting necessarily be covered by the attorney-client privilege — the sole privilege Defendants have invoked — inasmuch as no client was allegedly present, and a policy (rather

than legal advice) was apparently discussed. In any event, to the extent that future contempt was being considered, the crime-fraud exception would vitiate any privilege.

The Court will remain mindful of attorney-client privileges that may pertain to other communications as the testimony proceeds, and the Government will be free to object to particular questions. At this stage, however, Plaintiffs have pointed out numerous reasons why the privilege might well not apply. See ECF No. 205 (Pl. Resp.). The Court, furthermore, will limit the scope of the testimony to the current case and not permit questions regarding the particulars of other cases that the witnesses may have worked on, unless there is some direct showing of relevance. In sum, the Court sees no reason to delay the entire hearing while waiting for further, unspecified appellate guidance, as the Government also demands.

The Court, accordingly, ORDERS that Defendants' [201] Motion to Reconsider is DENIED.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: December 12, 2025