**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 25- 5452**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

In re DONALD J. TRUMP, in his official capacity, et al.,

Petitioners.

---

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia
Case No: 1:25-cv-00766-JEB

---

**REPLY IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS**

---

BRETT A. SHUMATE
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney
  General*
TIBERIUS DAVIS
  *Counsel to the Assistant Attorney
  General*
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-514-4357

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................ ii

INTRODUCTION .....................................................................1

ARGUMENT...........................................................................3

    I.    Mandamus Is Necessary to Protect the Separation of Powers. ...........3

    II.    Mandamus Is Also Required to Protect the Attorney-Client Privilege...

    .................................................................... 14

CONCLUSION.......................................................................20

CERTIFICATE OF COMPLIANCE ............................................21

# TABLE OF AUTHORITIES

## Cases

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
 968 F.2d 523 (5th Cir. 1992)...........................................................................4

*Bloom v. Illinois*,
 391 U.S. 194 (1968)........................................................................................3

*Cheney v. United States District Court*,
 542 U.S. 367 (2004)........................................................................................7

*Ex parte Fisk*,
 113 U.S. 713 (1885)...................................................................................... 11

*Ex parte Robinson*,
 86 U.S. 505 (1873)..........................................................................................4

*First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*,
 110 F.R.D. 557 (S.D.N.Y. 1986)...................................................................19

*In re Attorney General of the United States*,
 596 F.2d 58 (2d Cir. 1979) .............................................................................7

*In re Blackmon*,
 2016 WL 4055650 (W.D.N.C. July 25, 2016) ................................................6

*In re Boulware*,
 2010 WL 3724668 (D.S.C. Sept. 17, 2010) ...................................................8

*In re Establishment Inspection of Hern Iron Works, Inc.*,
 881 F.2d 722 (9th Cir. 1989).........................................................................12

*In re Grand Jury Investigation*,
 399 F.3d 527 (2d Cir. 2005)..........................................................................19

*In re Grand Jury Subpoena*,
 909 F.3d 26 (1st Cir. 2018)...........................................................................19

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) .............................................................. 14, 15

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998) ...................................................................20

*In re Novak*,
   932 F.2d 1397 (11th Cir. 1991) ...................................................................12

*In re Sealed Case*,
   754 F.2d 395 (D.C. Cir. 1985) .....................................................................18

*In re von Bulow*,
   828 F.2d 94 (2d Cir. 1987) .................................................................... 15, 17

*J.G.G. v. Trump*,
   147 F.4th 1044 (D.C. Cir. 2025) ...................................................... 3, 12, 13

*J.G.G. v. Trump*,
   2025 WL 3198891 (D.C. Cir. Nov. 14, 2025) ...............................................5

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995) .........................................................................13

*Morrison v. Olson*,
   487 U.S. 654 (1988) .......................................................................................3

*Objective Sols. Int'l, Ltd. v. Gammon*,
   2008 WL 538445 (S.D.N.Y. Feb. 25, 2008) ..................................................6

*Reed v. Rhodes*,
   500 F. Supp. 363 (N.D. Ohio 1980) ..............................................................8

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964) .......................................................................................7

*Trump v. J.G.G.*,
   604 U.S. 670 (2025) .....................................................................................11

*Trump v. United States*,
   603 U.S. 593 (2024) ...............................................................................3, 4, 6

*U.S. DOGE Serv. v. Citizens for Responsibility & Ethics in Washington*,
  145 S. Ct. 1981 (2025)..................................................................7

*United States ex rel. Yelverton v. Fed. Ins. Co.*,
  831 F.3d 585 (D.C. Cir. 2016).......................................................13

*United States v. Fokker Servs. B.V.*,
  818 F.3d 733 (D.C. Cir. 2016).........................................................6

*United States v. Jacobs*,
  117 F.3d 82 (2d Cir. 1997)............................................................18

*United States v. Joyce*,
  498 F.2d 592 (7th Cir. 1974)..........................................................13

*United States v. Neal*,
  101 F.3d 993 (4th Cir. 1996)............................................................4

*United States v. Straub*,
  508 F.3d 1003 (11th Cir. 2007) ......................................................12

*United States v. White*,
  887 F.2d 267 (D.C. Cir. 1989)........................................................16

*Wadler v. Bio-Rad Lab'ys, Inc.*,
  212 F. Supp. 3d 829 (N.D. Cal. 2016)...........................................17

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1992)......................................................................12

*Wilson v. Vaccaro*,
  883 F. Supp. 258 (N.D. Ill. 1995) ...................................................5

*Young v. United States ex rel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987)..............................................................5, 10, 11

**Statutes**

18 U.S.C. § 402.............................................................................4

**Court Rules**

Fed. R. Crim. P. 42....................................................................................1, 4

**Other Authorities**

ABA Model Rules of Professional Conduct (2026),
    Rule 1.6(b)(5)....................................................................................19

Emergency Mot.,
    *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir. Apr. 18, 2025)................................16

Resp. to Mot. to Suppl.,
    *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir. July 23, 2025) ................................17

**INTRODUCTION**

Unable to enforce its vacated injunction, and apparently unwilling to turn the matter over to the Executive Branch for potential prosecution, the district judge has initiated an unprecedented criminal fact-finding inquisition into the *mens rea* of senior government officials.  As a first step, the court has ordered the government's counsel of record in this litigation to face cross-examination by opposing counsel.  Mandamus is once again required to protect both the separation of powers and the attorney-client privilege.  Plaintiffs' response only confirms as much.

Most fundamentally, Plaintiffs fail to identify any legal authority enabling a court to undertake a criminal investigation on its own accord.  They claim that power is "inherent," but criminal investigation and prosecution are "inherent" to Article II, not Article III.  Only when contempt occurs "in [the court's] presence," such that no investigation is required, does the law recognize an exception under which the court can proceed summarily.  Fed. R. Crim. P. 42(b); *see also J.G.G. v. Trump*, 2025 WL 3198891, at *4 (D.C. Cir. Nov. 14, 2025) (Millett, J., dissenting from denial of rehearing *en banc*) (invoking court's "inherent authority" to police "proceedings *in its own courtroom*" (emphasis added)).  Plaintiffs admit this is not such a case; any supposed offense took place outside the courtroom.  Investigating and prosecuting any contempt thus falls to the Executive.  That proposition is so well-established as

1

to be axiomatic, and Plaintiffs' inability to point to a single counter-example is more than sufficient for mandamus.

Even if some limited fact-finding were permissible as a corollary to the power to refer matters for potential prosecution, the district court's actions here represent a clear abuse of discretion, and so this Court need not go further to grant relief.  The district court *already found* probable cause—a fact Plaintiffs simply ignore—which exposes the current proceedings as disingenuous and vindictive.  In pushing for still more investigation, Plaintiffs underscore that the only "missing" fact is the substance of the legal advice provided to the decisionmaking official, which is classically privileged and falls beyond the knowledge of the two initial witnesses in any event.  Plaintiffs also pivot to other allegations that the district court has never relied on for its contempt inquiry—thereby highlighting the dangers of allowing self-interested litigation adversaries to dictate what testimony gets taken in a criminal probe.

Mandamus is independently warranted to protect Defendants' privileges.  Plaintiffs say privilege calls cannot be made categorically in advance, but that misses the point.  At Plaintiffs' urging, the district court has already made it clear that it will pierce privileges on the fly, making appellate review impossible.  And its putative grounds for doing so are manifestly flawed.  Notwithstanding spliced, out-of-context quotations, Defendants have been careful *not* to waive the privilege by disclosing the substance of any legal advice.  And any invocation of the crime-fraud exception

would only illustrate that no further investigation is needed before referring the matter for criminal prosecution.  Plaintiffs cannot have it both ways.

When this Court granted mandamus relief blocking the prior contempt order, Judge Rao cautioned that further contempt proceedings would be an "extraordinary step." *J.G.G. v. Trump*, 147 F.4th 1044, 1073 (D.C. Cir. 2025) (Rao, J., concurring). Unfortunately, the district court did not heed that warning, and its refusal warrants not only appellate intervention but also reassignment of the case on remand.

## ARGUMENT

### I.    Mandamus Is Necessary to Protect the Separation of Powers.

**A.**    This Court asked the parties to address the district court's authority to investigate probable cause for indirect criminal contempt.  As Plaintiffs' response demonstrates, no such legal authority exists.  Indirect contempt is a "crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201 (1968), and the investigation and prosecution of crimes is a core *executive* function.  Courts' power to summarily prosecute *direct* criminal contempt that happens within the courtroom is a narrow exception with no application here.  That alone is sufficient to grant mandamus relief and terminate the district court's roving inquiry.

It is a foundational constitutional principle that "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute." *Trump v. United States*, 603 U.S. 593, 620 (2024).  Those two

powers—to investigate and to prosecute—are linked as "a quintessentially executive function." *Id.* (quoting *Morrison v. Olson*, 487 U.S. 654, 706 (1988) (Scalia, J., dissenting)). Other Circuits have thus held that district courts violated the separation of powers by "investigat[ing] the incriminating facts through extrajudicial means," because doing so "improperly assume[s] a prosecutorial role." *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996); *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir. 1992) (district court "*sua sponte* initiated the contempt proceeding" and "questioned the witnesses"). The only limited exception is for *direct* criminal contempt—offenses that occur in the court's "presence," "if the judge saw or heard the contemptuous conduct." Fed. R. Crim. P. 42(b); *see also* 18 U.S.C. § 402. In the latter situation, there is no need for any further factual investigation.

Plaintiffs' only response is that courts have "inherent authority." Opp.16. But investigating and prosecuting crimes is an inherent power of the *Executive Branch. Trump*, 603 U.S. at 620. If a court believes there is evidence of criminality, it can refer the matter to the Executive for further investigation or prosecution—but the court cannot investigate on its own accord, just as it cannot prosecute on its own.

Plaintiffs cite *Ex parte Robinson*, but the contempt there arose from "the tone and manner" of "language to the court,"—*i.e.*, direct contempt. 86 U.S. 505, 511 (1873). The Court observed that judicial power to punish contempt is "limited and defined" by statute, *id.* at 510, under which courts may proceed summarily only as

to direct contempt, 18 U.S.C. § 402. Plaintiffs also cite *Young v. U.S. ex rel. Vuitton et Fils S.A.*, but the Court there *reversed* contempt convictions because the court had appointed opposing counsel to prosecute instead of referring it to the Executive or another independent prosecutor; the case certainly does not support the proposition that courts have independent authority to investigate crimes. *See* 481 U.S. 787, 801 (1987) ("Referral will thus enhance the prospect that investigative activity will be conducted by trained prosecutors pursuant to Justice Department guidelines.").

Plaintiffs also invoke this Court's *denial* of en banc rehearing from the last grant of mandamus relief in this litigation. That is hardly authority for their novel position. Moreover, Judge Millett's dissent, upon which Plaintiffs rely, addressed the "inherent authority" of the court "to police the integrity of proceedings *in its own courtroom*." *J.G.G.*, 2025 WL 3198891, at *4 (Millett, J., dissenting from denial of rehearing *en banc*) (emphasis added). That is a reference to *direct* contempt—acts that occur within the courtroom.

Turning to specific cases, Plaintiffs point to three scattered district courts over the last three decades that supposedly conducted criminal fact-finding investigations. Opp.17. None actually did. In *Wilson v. Vaccaro*, the defendants asked for relief that sounded in "civil contempt," and the court held a hearing at the "request" of the alleged contemnor. 883 F. Supp. 258, 261-62 (N.D. Ill. 1995). After the hearing, the court determined to treat the petition as seeking criminal contempt, and so it

"refer[red] this matter to the United States Attorney for *investigation* and possible prosecution." *Id.* at 263-64 (emphasis added). Likewise, *In re Blackmon* started as a civil contempt proceedings; after months of non-compliance, the district court held a show-cause hearing at which one of the defendants failed to appear and the other "did not attempt to rebut the evidence of contempt"; since they were "unable or unwilling to purge" their civil contempt, the court "refer[red] the matter to the United States Attorney for consideration of prosecution for criminal contempt." 2016 WL 4055650, at *2 (W.D.N.C. July 25, 2016). Finally, in a third case, the court similarly found after a hearing that certain defendants acted "in civil contempt" of the court's injunctions, but specifically declined to pursue criminal contempt. *Objective Sols. Int'l, Ltd. v. Gammon*, 2008 WL 538445, at *3 (S.D.N.Y. Feb. 25, 2008).

Plaintiffs thus fail to identify a single instance of a court conducting its own factual investigation into indirect criminal contempt—let alone any appellate or Supreme Court precedent indulging such a stark departure from basic separation-of-powers principles. Instead, Plaintiffs pivot to argue that Defendants lack sufficient authority "prohibiting" such proceedings. Opp.17-18. The background rule, though, is abundantly clear: "[i]nvestigative and prosecutorial decisionmaking is the special province of the Executive Branch." *Trump*, 603 U.S. at 620. Violation of that bedrock principle suffices for mandamus. Indeed, this Court has "never required the existence of a prior opinion addressing the precise factual circumstances ... at issue

6

in order to find clear error justifying mandamus relief." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 749-50 (D.C. Cir. 2016). Rather, mandamus is often granted to resolve "an issue of first impression" or "to settle new and important problems." *Schlagenhauf v. Holder*, 379 U.S. 104, 111 (1964). That is especially true in cases implicating the separation of powers. *See, e.g.*, *U.S. DOGE Serv. v. Citizens for Responsibility & Ethics in Washington*, 145 S. Ct. 1981 (2025); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004); *In re Att'y Gen. of U.S.*, 596 F.2d 58, 64 (2d Cir. 1979). That no court has taken such extreme measures before is an indictment of the district court, not this petition.

**B.**    Although there is no authority for a court to undertake its own factual investigation into indirect criminal contempt—rather than simply refer the matter for investigation if it believes the evidence supports that step—this Court need not go that far to grant relief. Even if some limited investigative power existed, the district court's investigation here represents a gross abuse of process.

Notably, Plaintiffs completely ignore that the district court had already found probable cause months ago without the need for any investigation. ECF 81. The only gap was the identity of the decisionmaking official, which has now been filled by declarations identifying Secretary Noem. ECF 198. So even assuming probable

cause is the proper standard for referral,[1] Plaintiffs cannot explain why that standard was satisfied in April 2025 but somehow no longer satisfied in December 2025. For its part, the district court responded that new evidence had emerged, in the form of the whistleblower allegations from Reuveni. ECF 208 at 2. That explanation is not credible. New evidence that ostensibly *supports* the prior finding obviously cannot necessitate further investigation if the true goal is simply a referral.

Even looking past that troubling indication of vindictiveness, Plaintiffs fail to explain why any investigation is necessary. They say the court needs to determine "who may have acted willfully" (Opp.21), but their explanation of how the court would evaluate willfulness only confirms that doing so would involve piercing the attorney-client privilege. All of their follow-up questions hinge on which attorneys Secretary Noem spoke to and what they told her about the order. Opp.21. Indeed, Plaintiffs contend that additional fact-finding is necessary to determine the substance of the legal advice conveyed to the Secretary and whether her decision "was based

---

[1] Plaintiffs say this standard provides alleged contemnors with more "procedural protections" and is "prudent." Opp.18. As the district court noted, such a step is probably not required. ECF 81 at 39. Even if it is, that does not mean the court is empowered to conduct its own investigation to find probable cause, and that is certainly not a "protection" that Defendants here have sought. Notably, none of Plaintiffs' or the district court's cited cases mention an investigation—save two, where investigations were conducted by *the government*, not the court. *See Reed v. Rhodes*, 500 F. Supp. 363, 366-67, 404 (N.D. Ohio 1980) (ordering "the United States to investigate" for probable cause); *In re Boulware*, 2010 WL 3724668, at *1 (D.S.C. Sept. 17, 2010) (directing United States "to investigate this matter").

on, or consistent with, the legal advice." Opp.12, 14.  All of that is quintessentially privileged; the court cannot compel answers to those questions at this juncture, unless and until a criminal defendant invokes advice of counsel as a defense to contempt charges.  *See infra* Part II.

Regardless, Plaintiffs do not dispute that Ensign and Reuveni have no personal knowledge of the legal advice given to the Secretary by Deputy Attorney General Blanche, then-Principal Associate Deputy Attorney General Bove, or then-Acting General Counsel Mazzara.  As Ensign's declaration and Reuveni's account confirm, neither participated in formulating that legal advice or in the subsequent decisionmaking; they functioned as trial attorneys.  ECF 201-1; ECF 158-1 at 11-14.  And a hypothetical comment allegedly made at an internal Justice Department meeting more than 24 hours in advance of the TRO (Opp.6) is far too tenuous to cast any light on the subsequent *mens rea* of the DHS Secretary, who did not attend that meeting.  Accordingly, neither witness has anything to offer on willfulness, and that too exposes the lack of need for this extraordinary fishing expedition.

Recognizing the mismatch between the ostensibly missing willfulness facts and the knowledge of the two witnesses, Plaintiffs seek to expand the scope of the district court's inquiry enough to justify compelling the testimony of Ensign and Reuveni.  For example, they argue that Defendants and their counsel sought to expedite removals while attempting to delay judicial review, but that has nothing to

do with the contempt inquiry into supposed violation of the TRO, and is not even arguably "contumacious." Opp.7. Likewise, Plaintiffs press baseless accusations that Ensign misled the district court by stating that that he did not know the precise status of the deportation flights during the TRO hearing. Opp.8. But that too is unrelated to the court's inquiry, which is supposedly focused on whether the decision by the DHS Secretary to proceed with a transfer of custody later that night violated the court's subsequent order enjoining further removals.[2]

While irrelevant to the stated purposes of the court's contempt inquiry, these new arguments do underscore the impropriety of allowing Plaintiffs—interested litigants, represented by counsel who are adverse to the government in many high-profile immigration cases—to participate in a criminal process, least of all to elicit testimony from their opposing counsel. As the Supreme Court warned in *Young*, the "expansive prosecutorial powers to gather information" can easily be abused "for private purposes." 481 U.S. at 811. Indeed, prosecutors exercise "considerable discretion in matters such as the determination of which persons should be *targets of investigation*, what methods of investigation should be used, *what information will be sought as evidence*, which persons should be charged with what offenses,

---

[2] The only misleading thing is Plaintiffs' quote, which omits Ensign's complete answer: that he that he was aware that Plaintiffs had submitted evidence that planes had taken off or were taking off imminently and that he could neither "confirm" nor "contest" that. ECF 20 at 11. Ensign's inability (and explicit refusal) to *contest Plaintiffs' evidence* is hardly misleading, let alone intentionally so.

*which persons should be utilized as witnesses*," etc. *Id.* at 806-07 (emphasis added). The mere "appearance" that a private litigant could "use the criminal investigation to gather information" for its own purposes was sufficient to create a "categorical rule" against their involvement. *Id.* at 806-07, 814.

Plaintiffs' involvement here is at least as improper. They and their lawyers have every incentive to harass the government's counsel of record and to pry into litigation strategy. The district court's order gives them unparalleled tools to do so. Tellingly, they press a new argument—never raised by the district court—that an investigation is justified to consider sanctions, from which Plaintiffs would benefit in the form of "attorneys' fees" or adverse "inferences in the related litigation." Opp.46. Of course, this Court cannot bless the district court's actions on theories it has never invoked; more importantly, this pivot shows once again the dangers of inviting Plaintiffs, with all their biases, to participate in this misguided inquisition.

C.    As if all of this were not enough, any criminal contempt inquiry is legally foreclosed right out of the gate, as a matter of both jurisdiction and the merits. There is thus no need here to test the outer boundaries of a district court's "inherent" authority to conduct criminal investigations.

*First*, criminal contempt cannot exist for the violation of an order that lacked jurisdiction in the first place. *See Ex parte Fisk*, 113 U.S. 713, 714 (1885). The Supreme Court vacated the order here for a lack of jurisdiction. *Trump v. J.G.G.*,

604 U.S. 670, 672 (2025). As a result, "the original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating nothing at all." *In re Novak*, 932 F.2d 1397, 1401-02 (11th Cir. 1991).

Plaintiffs' response, in a footnote, is to falsely claim this Court rejected this argument last time. Opp. 2 n.1. Not so. This Court granted mandamus and denied rehearing. The fact that several judges said nothing and others wrote separately is irrelevant and certainly not binding. Plaintiffs also suggest *Ex parte Fisk* is no longer good law. That too is wrong. For over 150 years the Supreme Court has held that when "the order itself, being without jurisdiction, is void, [then] the order punishing for the contempt is equally void." *J.G.G.*, 147 F.4th at 1062 (Katsas, J., concurring) (quoting *Ex parte Fisk*, 113 U.S. at 718). The Supreme Court did not overturn this precedent in *Willy v. Coastal Corp.*, which involved Rule 11 sanctions against an attorney, not contempt. 503 U.S. 131, 139 (1992). And while the Eleventh Circuit has drawn a dubious distinction between jurisdiction over a *case* and jurisdiction to enter an *order*, *United States v. Straub*, 508 F.3d 1003, 1006, 1010 (11th Cir. 2007), that distinction does not help Plaintiffs here, because the district court lacked jurisdiction to enter the TRO, even as other litigation continues in the same case to this day. So either way, since "the original order is deemed a nullity," Defendants "cannot be fairly punished for violating nothing at all." *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 727 (9th Cir. 1989).

*Second*, it is "settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974); *see also see United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 587 (D.C. Cir. 2016) (courts "resolve omissions or ambiguities in the order in favor of the enjoined party"). The clarity required is more than a simple lack of ambiguity, as even civil contempt is a "potent weapon" that "courts should not resort [to] where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (emphasis added).

Here, Judge Katsas has explicitly agreed, based on careful review of the TRO and its surrounding context, that Defendants did not violate it. *J.G.G.*, 147 F.4th at 1052-55 (Katsas, J., concurring). The fact that Judge Katsas so interpreted the order necessarily means Defendants could not have committed criminal contempt. On this point, Plaintiffs' sole response is that no other judge joined Judge Katsas, but that is irrelevant: Judge Katsas' opinion is dispositive not because it is binding or even right (though it is) but because it establishes that the order was not sufficiently "clear and decisive" to allow for criminal contempt. *Joyce*, 498 F.2d at 596. This is akin to a public official in the qualified immunity context citing out-of-circuit precedent to demonstrate that he did not violate "clearly established" law: That precedent may not be binding, but it still proves the objective reasonableness of his conduct.

In these circumstances, plowing ahead with a novel, constitutionally dubious criminal investigation under the aegis of the district court and aided by Plaintiffs' counsel is so beyond the pale as to warrant the remedy of mandamus once again.

## II.    Mandamus Is Also Required to Protect the Attorney-Client Privilege.

Mandamus relief is independently warranted because the district court's order threatens attorney-client privilege.  As set forth above, the topics that Plaintiffs identify for investigation directly implicate the privilege.  Yet the district court has already signaled that it believes most privileged information should not be protected and that it will handle privilege issues on the fly without giving any opportunity for appellate review.  ECF 208 at 2-3.  That warrants mandamus, since if the court pierces privilege during live testimony, "the cat is out of the bag."  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760-61 (D.C. Cir. 2014) (Kavanaugh, J.).

**A.**    Plaintiffs claim that any privilege concerns are "premature" and cannot be used to foreclose testimony, as the district court will handle privilege issues as they arise.  Opp.24-25.  That attacks a straw-man.  Defendants' objection is not to *any* testimony; it is to barreling ahead with testimony that is highly likely to invade the privilege without first erecting any protective guardrails, including briefing in advance on cross-cutting legal issues, preliminary *in camera* review, and pre-disclosure appeals where appropriate.  ECF 201 at 9-10.

14

In response to Defendants' motion below seeking those protections, Plaintiffs for the first time raised various blanket arguments against any invocation of the privilege. ECF 205 at 14-21. Incredibly, rather than defer the (non-time-sensitive) hearing to seek briefing on these new arguments—or even await a reply from Defendants—the district court almost immediately denied reconsideration, favorably recounted Plaintiffs' sweeping arguments against the privilege, and ruled that objections would be addressed during live testimony, with no chance for *in camera* review or pre-disclosure appeal. ECF 208 at 2-3.

Besides underscoring the court's improper barrel-ahead-at-all-costs mindset, that approach also creates a stark, intolerable risk that privileged information will be disclosed under the threat of contempt with no avenue for relief. *See In re Kellogg Brown & Root*, 756 F.3d at 760-61. Given these risks and the district court's refusal to account for them, there is nothing premature about this petition. *See id.*; *In re von Bulow*, 828 F.2d 94, 99 (2d Cir. 1987).

**B.**     Plaintiffs also argue that the privilege might not apply to wide swaths of information. The district court gave credence to those arguments, albeit without fully endorsing them. ECF 208 at 2-3. But they are legally wrong, and the court's willingness to indulge them at all reinforces the need for mandamus relief.

*First*, Plaintiffs contend that Defendants waived the privilege by putting the legal advice at issue as a defense to willfulness. Opp.25-31. That is absurd.

Defendants repeatedly and expressly *declined* to raise such defenses at this time, making clear that individual defendants may choose to do so at any contempt trial. ECF 201 at 5-6; *see also United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) (R.B. Ginsburg, J.). As Plaintiffs elsewhere note, the declarations that Defendants submitted below were careful *not* to disclose the substance of any legal advice— only the fact that advice was given. Opp.12-14; *e.g.*, ECF 195 ¶ 10. Merely saying that advice was given from A to B, without disclosing its substance, is not a waiver; indeed, that is the type of basic factual information that parties must routinely disclose in a privilege log.

Taking snippets of quotations out of context, Plaintiffs argue that Defendants invoked "good faith" to resist the charges of contempt. Opp. 27-29. That is a gross mischaracterization. Defendants have always argued that "the Government Did Not Violate the TROs, Let Alone Unambiguously"—not that legal advice defeated willfulness. Emergency Mot., *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir. Apr. 18, 2025); *see also* ECF 198 at 2; ECF 201 at 3 n.2. The filings Plaintiffs cite are not to the contrary. *See* Opp.27-28. In their initial show-cause response below, Defendants argued that they had complied with the TRO, at minimum as they "could reasonably have understood it"—as an objective matter. ECF 58 at 7. Likewise, in recent submissions, Defendants argued that construing the TRO as inapplicable to detainees who had already been removed from the United States was, at minimum,

objectively "reasonable" (and indeed consistent with Judge Katsas's interpretation), and thus that the TRO was not clear enough to give rise to contempt. ECF 195 at 1. That was not an argument about subjective good-faith based on legal advice.

Even more absurdly, Plaintiffs argue that Defendants waived the privilege by responding to privileged information that Reuveni leaked without authorization and that Plaintiffs then used as affirmative evidence. Opp.29-30. For example, they used Reuveni's report to assert that Defendants maintained constructive custody over detainees in El Salvador, ECF 177-8; in response, Defendants objected to that use of "improperly leaked, privileged information" but also explained why it did not help Plaintiffs on the merits, ECF 182 at 19-20. In another instance, Plaintiffs tried to inject Reuveni's report into the case and Defendants responded by explaining that "[a]t most, the evidence shows (privileged) internal debates about what the district court's order meant." Resp. to Mot. to Suppl., *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir. July 23, 2025). It cannot be that Defendants are unable to respond to Plaintiffs' use of leaked privileged material without themselves surrendering privilege. This is clearly not an intentional relinquishment. *Cf. von Bulow*, 828 F.2d at 100-01.[3]

In short, Defendants have steadfastly protected their privilege at all times. *See* ECF 198 ("Absent a waiver of the attorney-client privilege, the lawyers who gave

---

[3] Plaintiffs' reliance on an out-of-circuit magistrate judge's ruling where the party admitted to waiver but disputed its scope is hardly relevant here. *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016).

Secretary Noem legal advice cannot testify about the substance of that advice."); ECF 201 at 5-6 (expressly invoking privilege). They have not come close to waiver, and the district court's suggestion otherwise is further grounds for mandamus.

*Second,* Plaintiffs suggest the crime-fraud exception could apply generally, or at least to the March 14 meeting with now-Judge Bove. Opp.5-7; *see also* ECF 208 at 2-3 (district court indulging this theory). But the party seeking to invoke the crime-fraud exception must show "*probable cause* of fraud or other misconduct," among other elements. *United States v. Jacobs,* 117 F.3d 82, 88 (2d Cir. 1997) (emphasis added).[4] If there exists probable cause to invoke the exception, that is necessarily also sufficient for a referral—without the need for further investigation or testimony. The point is not that "application of the crime-fraud exception should wait until after any criminal referral" (Opp.33 n.5), but rather that the ostensible purpose of the testimony disappears if there is already sufficient evidence to invoke the exception. In any event, there is no basis to invoke the crime-fraud exception against the senior leadership of the Justice Department, including because even Reuveni said he "left the meeting understanding that DOJ would tell DHS to follow all court orders." ECF 158-1 at 11.

---

[4] Plaintiffs note that the standard in this Court is less than probable cause, but their own case says "there is little practical difference between the two tests." *In re Sealed Case,* 754 F.2d 395, 400 n.3 (D.C. Cir. 1985).

*Third*, Plaintiffs argue that government attorneys can disclose privileged information in self-defense. Opp.33. But this is not a bar disciplinary proceeding or a malpractice lawsuit. Nor—despite Plaintiffs' repeated efforts to expand its scope—is the district court's contempt inquiry focused on any attorney misconduct; rather, the sole focus is a non-lawyer who made the decision not to halt the transfer of custody of certain detainees, allegedly in violation of the TRO. The self-defense exception is therefore irrelevant. Moreover, that exception might *permit* lawyers to disclose privileged information without breaching ethical duties, but it is not a basis to *compel* lawyers to disclose privileged information, as the court here seeks to do. *See First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 559 (S.D.N.Y. 1986) (lawyer sought permission to invoke); ABA Model Rules of Professional Conduct (2026), Rule 1.6(b)(5) ("A lawyer *may* reveal information…" (emphasis added)).

*Finally*, Plaintiffs advance the sweeping proposition that the privilege cannot be used by government lawyers to shield evidence from a criminal investigation, because government lawyers work for the public, not private clients. Opp.34-35. That is astonishingly overbroad. *See In re Grand Jury Subpoena*, 909 F.3d 26, 30 (1st Cir. 2018) (rejecting similar arguments); *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005) ("We believe that, if anything, the traditional rationale for the privilege applies with special force in the government context."). To be sure,

when federal prosecutors themselves seek evidence from other federal employees, the privilege may give way in the face of that intra-branch dispute. *See In re Lindsey*, 158 F.3d 1263, 1266 (D.C. Cir. 1998). But that is a far cry from allowing a district court to vitiate the Executive's privilege merely by initiating its own inquiry.

The district court's threat to the privilege thus reinforces the separation of powers threat posed by the court's unprecedented criminal investigation. This Court should grant mandamus relief to protect both institutional interests.

## <u>CONCLUSION</u>

The Court should grant a writ of mandamus, and reassign this case in light of the serious appearance of partiality created by the district court's actions.

Dated: January 5, 2026

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney*
    *General*

 *s/ Tiberius Davis*
_____
TIBERIUS DAVIS
   *Counsel to the Assistant Attorney*
    *General*

Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4357

20

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume limit specified by this Court's order of December 15, 2025, because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 4,892 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word for Microsoft 365 MSO (Version 2509 Build 16.0.19231.20138) 64-bit.


    Dated: January 5, 2026                *s/ Tiberius Davis*
                                           TIBERIUS DAVIS