No. 25-5452

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al.,

*Petitioners.*

On Petition for a Writ of Mandamus to the United States District Court for the District of Columbia No. 1:25-cv-00766 The Hon. James E. Boasberg

## *AMICI CURIAE* OF 174 FORMER JUDGES IN SUPPORT OF RESPONDENT'S PETITION FOR REHEARING EN BANC

Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE#15180
Washington. D.C. 20003
(202)594-9958
norman@democracydefenders.org

**Counsel for *Amici Curiae***

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING[1]

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for amici curiae certifies that this separate brief is necessary because it provides unique insights regarding the importance of the court's contempt power. The brief explains how the criminal contempt power is a core judicial authority and indispensable to the existence of a court, and how the issuing court's power to investigate disobedience is constitutionally inseparable from its power to issue orders. Because *amici* are not aware of any other *amicus* brief addressing these issues, *amici* certify pursuant to D.C. Circuit Rule 29(d) that joinder in a single brief with other *amici* would be impracticable. Respondent consents and Petitioner is unopposed to this filing.

*/s/ Norman L. Eisen*
Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE#15180
Washington. D.C. 20003
(202) 594-9958
norman@democracydefenders.org

**Counsel for *Amici Curiae***

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amici curiae* or its counsel made a monetary contribution to its preparation or submission.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

*/s/ Norman L. Eisen*
Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE#15180
Washington. D.C. 20003
(202) 594-9958
norman@democracydefenders.org

**Counsel for *Amici Curiae***

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**I.    Parties and *Amici***

Except for *amici* and any other *amici* who had not yet entered an appearance in this case as of the filing of Respondents' brief, all parties, intervenors, and *amici* appearing in this Court are listed in Respondents' brief.

**II.    Rulings Under Review**

References to the ruling at issue in this case appear in Respondents' brief.

**III.    Related Cases**

Related cases are listed in Appellees' brief.

/s/ Norman L. Eisen
Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE#15180
Washington. D.C. 20003
(202) 594-9958
norman@democracydefenders.org

**Counsel for *Amici Curiae***

iii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................v

STATEMENT OF INTEREST AND INTRODUCTION........................................1

ARGUMENT ..........................................................................................................2

    I.    The Criminal Contempt Power Is A Core Authority and Indispensable to the Existence of a Court.......................................................................................2

    II.    The Issuing Court's Power to Investigate Disobedience Is Constitutionally Inseparable from Its Power to Issue Orders...........................................6

CONCLUSION ......................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204 (1821) ....................................................3

*Ex parte Robinson*, 86 U.S. (19 Wall.) 505 (1874) ..................................................2

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union*,
  103 F.3d 1007 (D.C. Cir. 1997)........................................................................3

*Howat v. State of Kansas*, 258 U.S. 181 (1922) ......................................................4

*In re Debs*, 158 U.S. 564 (1895)........................................................................6, 8

*In re Sealed Case,* 77 F.4th 815 (D.C. Cir. 2023) ...................................................4

*J.G.G. v. Trump*, 147 F.4th 1044 (D.C. Cir. 2025)........................................... 1, 2, 6

*United States v. Hudson*, 11 U.S. (7 Cranch) 32 (1812)............................................3

*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,*
  689 F.2d 885 (9th Cir. 1982) ...........................................................................3

*Walker v. City of Birmingham*, 388 U.S. 307 (1967) ...............................................4

*Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787 (1987) ........................8

**Statutes**

Judiciary Act of 1789, ch. 20, § 17, 1 Stat. 73 (1789)................................................2

**Other Authorities**

Fox, *The King v. Almon*, 24 L.Q. Rev. 184 (1908)....................................................7

## <u>STATEMENT OF INTEREST AND INTRODUCTION</u>

The most basic proposition of judicial authority is that courts must be able to enforce their own orders. A court that issues orders a litigant is free to disregard or circumvent is not a court in any meaningful sense; it is instead an advisory body, and its judgments are mere suggestions. The contempt power is crucial to transforming judicial decrees into enforceable law. As part of that authority, courts also necessarily possess the power to conduct the investigative and procedural steps—including gathering evidence, calling witnesses, and determining which officials bear responsibility for an apparent violation—before making any referral for criminal prosecution. That power is inherent and indispensable to the integrity of the federal judiciary. The attempt by the Executive Branch in this case to interfere with that bedrock function—through an extraordinary writ of mandamus—should be rejected.

*Amici* are 174 former judges who write to express grave concern over the D.C. Circuit panel's decision to peremptorily halt Chief Judge Boasberg's criminal contempt proceedings. The panel's ruling creates a means for the Government to defy an order, and then curtail court inquiry into the Government's conduct on the basis of post-hoc justifications. *J.G.G. v. Trump*, 147 F.4th 44, 100 (Childs, J., dissenting) (panel "cut[] factfinding at the knees" by ratifying a litigant's ex post determination of what a court order means"); *see also J.G.G. v. Trump*, 147 F.4th

1

1044, 1085 (Pillard, J., dissenting). As former judges, *amici* have a unique understanding of the vital role contempt proceedings play in ensuring compliance with their rulings and, more generally, the rule of law. We urge the Court to grant the Petition.

## ARGUMENT

### I. The Criminal Contempt Power Is A Core Authority and Indispensable to the Existence of a Court

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874). The contempt power is not merely a useful tool for courts; it is "inherent" and "essential." Without it, the exercise of every other judicial power may collapse.

The Judiciary Act of 1789, which expressly empowered all federal courts to punish, at their discretion, all contempts of their authority, recognized and codified what equity and the constitution already required.[2] "It is true, that the Courts of justice of the United States are vested, by express statute provision, with power to

---

[2] "Sec. 17.  And be it further enacted, That all the said courts of the United States shall have power to…punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same; and to make and establish all necessary rules for the orderly conducting business in the said courts, provided such rules are not repugnant to the laws of the United States."

2

fine and imprison for contempts; but it does not follow, from this circumstance, that they would not have exercised that power without the aid of the statute, or not, in cases, if such should occur, to which such statute provision may not extend; on the contrary, it is a legislative assertion of this right, as incidental to a grant of judicial power." *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227–28 (1821). *See also United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution….To fine for contempt—imprison for contumacy—inforce the observance of order, &c. are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others: and so far our Courts no doubt possess powers not immediately derived from statute").

Furthermore, no party—not private litigants nor the Executive Branch—may be the judge of which court orders deserve obedience. The remedy for an order believed to be erroneous is to challenge it through reconsideration or appeal; the remedy for confusion over an order's meaning would be to seek clarification. *See Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1019 (D.C. Cir. 1997) (affirming contempt finding and noting litigant "did not seek a clarification"); *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885 (9th Cir. 1982) ("if [a party] was in doubt about the scope of the injunction, the proper procedure was to seek a modification or clarification"). *See also In re Sealed*

3

*Case,* 77 F.4th 815, 835 (D.C. Cir. 2023) (affirming civil contempt finding for non-compliance with search warrant, noting contemnor's failure to raise issues regarding scope of production with opposing party prior to due date for production). Unilateral defiance is not permitted, and the contempt power is what enforces that rule. The Supreme Court has reinforced this principle repeatedly, including upholding the contempt convictions of civil rights demonstrators who had violated a state court injunction they believed to be unconstitutional. An injunction "must be obeyed…however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-190 (1922)).

This principle applies with heightened urgency when the party defying the court order is the Executive Branch of the federal government. Officials of the Executive Branch have taken an oath to uphold the Constitution—a commitment they violate where they willfully defy a court order. Moreover, these officials, by virtue of the resources and powers of their offices, are in an especially strong position

4

to challenge or seek clarification of purportedly erroneous or unclear court orders through proper legal channels. The attempt to use those powers to defy a court order and then seek to avoid scrutiny of that defiance is a profound abuse of power and violation of the separation of powers.

And where the appellate court shuts down a contempt inquiry before the district court has even completed its investigation, the result is both the subordination of the Judicial Branch to the Executive Branch and a threat to our constitutional framework.

The logic of these principles applies with equal force in circumstances where the Government, as the alleged contemnor, also controls the prosecutorial apparatus that would ordinarily be called upon to vindicate the court's authority. In such circumstances, the court's independent authority to identify responsible officials, define the scope of the inquiry, and set the terms of any referral is not an expansion of judicial power. It is, in fact, the minimum necessary to preserve the judiciary's institutional integrity against a branch that has an obvious structural interest in foreclosing scrutiny of its own conduct.

The panel's ruling that the supposed ambiguity of Chief Judge Boasberg's Temporary Restraining Order ("TRO") undercuts the district court's authority to investigate or make a referral violates these core principles and unnecessarily shields the Government from its responsibilities. Mandamus is not necessary to address the

Government's argument, since "if such ambiguity were present, it could be fully litigated as an ordinary defense to a contempt prosecution and on appeal from conviction, which makes it ineligible for mandamus." *J.G.G.*, 147 F.4th at 1076 (Pillard, J., dissenting). There was no need for the panel to assist the Executive Branch in avoiding judicial investigation and the deleterious consequences of doing so extend far beyond this case.

## II. The Issuing Court's Power to Investigate Disobedience Is Constitutionally Inseparable from Its Power to Issue Orders

The issuing court's power to conduct its own contempt inquiry is inextricably linked to the contempt power itself. The Supreme Court has precisely articulated this principle:

> [T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or *another court*, would operate to deprive the proceeding of half its efficiency.

*In re Debs*, 158 U.S. 564, 594-95 (1895) (emphasis added).

Three elements of the Court's formulation of the contempt inquiry function are of particular relevance here.

First, the inquiry power is not secondary. As the Court notes, it is equal to the power that created the order. That framing should cause the appellate court, in

reviewing the underlying order, to avoid acquiring authority over the contempt inquiry absent extraordinary circumstances not present here.

Second, the Court describes the inquiry function as having been "from time immemorial, the special function of the court." Just as with the contempt power itself, this is not a statutory creation, a modern innovation, or a procedural convenience—it is a foundational feature of judicial power inherent in the Constitution. Indeed, this authority predates the Constitution itself, inherited from the English equity courts and incorporated into the structure of Article III. *See* Fox, *The King v. Almon*, 24 L.Q. Rev. 184, 194–195 (1908). Any usurpation of that power therefore weakens one of the defining features of judicial bodies in Anglo-American law and violates constitutionally proscribed authority.

Third, and perhaps most significantly, the Court explains that submitting the contempt question to any other tribunal, including "a jury or another court," would "deprive the proceeding of half its efficiency." This statement directly addresses attempts by appellate courts to interfere with a district court's ongoing contempt inquiry: even well-intentioned appellate intervention in the fact-finding stage of a contempt proceeding diminishes the proceeding's constitutional function. The contempt inquiry is solely for the issuing court. The panel in this case has done precisely what the Supreme Court has said it may not: it has interfered with an issuing court's criminal contempt investigation while it was still in progress.

While courts should exercise their contempt authority as a "last resort," *see Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787, 801 (1987) (holding that "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the judiciary has a means to vindicate its own authority without complete dependence on other branches…"), the path to a last resort runs through, not around, the preliminary stages of inquiry, notice, and hearing. By utilizing mandamus to foreclose those stages before they are complete, an appellate court does not enforce restraint. It encourages defiance of court orders, precisely what the contempt power was designed to prevent. As the Court recognized in *In re Debs*, the inquiry into disobedience is the court's "special function." That function cannot be set aside without destroying the very institutional capacity the function exists to protect.

<u>**CONCLUSION**</u>

The panel's decision to halt the district court's criminal contempt inquiry undercuts an essential power of the judiciary to enforce its rulings and the rule of law. That danger is heightened by doing so to aid an Executive Branch whose conduct in this case illustrates an intent to push the limits of compliance with court orders. In light of the profound implications of the panel's mandate, *Amici* respectfully request that the Court grant the Petition.

8

Dated: May 12, 2026

Respectfully submitted,

*/s/ Norman L. Eisen*
Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norman@democracydefendersfund.org

**Counsel for the *Amici Curiae***

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 1,977 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), respectively, because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

Respectfully submitted,

/s/ Norman L. Eisen
Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE#15180
Washington. D.C. 20003
(202) 594-9958
norman@democracydefenders.org

**Counsel for *Amici Curiae***

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on May 12, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

*/s/ Norman L. Eisen*
Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE#15180
Washington. D.C. 20003
(202) 594-9958
norman@democracydefenders.org

**Counsel for *Amici Curiae***