No. 25-5452

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re: DONALD J. TRUMP, in his official capacity, *et al.*,

Petitioners.

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia
Case No: 1:25-cv-00766-JEB

**OPPOSITION TO
PETITION FOR REHEARING EN BANC**

BRETT A. SHUMATE
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney
  General*
TIBERIUS DAVIS
  *Counsel to the Assistant Attorney
  General*
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-860-8970

**INTRODUCTION**

The panel in this case granted a writ of mandamus to stop the district court from conducting a wide-ranging inquisition into national-security and foreign-policy deliberations of senior Executive officials, including by putting the Government's counsel of record on the stand for cross-examination by opposing counsel—all in service of a potential referral for criminal contempt that is legally foreclosed by the fact that the Government did not violate any court order. The district court embarked on this treacherous path even though no further information was necessary for the district court to make a referral if it still believed one to be warranted. The panel's decision was correct. More importantly for present purposes, nothing in the decision remotely warrants rehearing en banc.

Plaintiffs—who do not even have standing to seek rehearing, since they are mere bystanders to a contempt proceeding—argue that the panel's ruling is "inconsistent with this Circuit's mandamus cases," Pet.1, but there is no dispute over the standard for granting mandamus relief. Rather, Plaintiffs argue that the panel misapplied that test to the facts here. That reduces to a set of highly fact-bound disagreements over how best to construe the district court's ambiguous temporary restraining order, and whether the Government's declarations gave the court enough information for a referral without a parade of live witnesses threatening the attorney-

1

client privilege.  As Judge Walker noted in concurrence, the panel's assessment of these unique facts has zero prospective consequences.

The petition's insistence that the decision raises "issues of grave importance for the Judiciary's ability to enforce its orders[,]" Pet.1, is therefore pure fantasy. The panel agreed that courts have the power to enforce their orders, including through referral for criminal contempt.  Op.20.  The panel did not question, either, a court's power to engage in fact-finding incident to such a potential referral.  Op.18 n.11.  Instead, the panel merely concluded that, on these facts, no contempt charge could succeed because the plain meaning of the district court's injunction did not prohibit the Government's conduct, and that in all events the testimony that the district court sought to compel was irrelevant to a potential referral while needlessly inviting a clash between the Judiciary and the Executive.  Again, that conclusion was a prudent exercise of discretion; regardless, it does not present any credible ground for the extraordinary step of rehearing en banc.

Three members of this Court have now agreed that the Government's actions on March 15, 2025, did not violate any court orders.  *See* Op.28 (Rao, J.); Conc.8 (Walker, J.); *J.G.G. v. Trump*, 147 F.4th 1044, 1051-57 (D.C. Cir. 2025) (Katsas, J., concurring).  Given that criminal contempt can lie only from violation of a clear and unambiguous order, those conclusions are fatal to any such charge—whether this case is reheard en banc or not.  Rehearing would thus only raise the temperature (and

2

tee up a series of difficult questions that the panel did not have to confront), without serving any real purpose.  The Court should deny the petition.

## BACKGROUND

**1.**  On March 15, 2025, the President invoked the Alien Enemies Act (AEA) to detain and remove Venezuelan members of Tren de Aragua (TdA), a foreign terrorist organization.  *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, 90 Fed. Reg. 13033; Op.3-4.

That same day, five Venezuelans in Texas sued in the district court below to block the Government from removing them.  Within hours, the court ordered the Government not to "remove any of the individual Plaintiffs from the United States for 14 days."  3/15/25 Second Minute Order; Op.4-5.  Later that day, the court held a hearing, orally granted class certification, and ruled that Plaintiffs were likely to succeed on the merits.  The court assured counsel it "w[ould] issue a minute order memorializing [a TRO] so you don't have to race to write it down."  ECF 20 at 42.  The court said the TRO "would be to prevent the removal of the class for 14 days or until further order."  *Id.*  Thereafter, in light of an earlier assertion by Plaintiffs' counsel that flights were scheduled to take off during the hearing, the court stated that "any plane containing these folks that is going to take off or is in the air needs to be returned to the United States, but those people need to be returned to the United States[,] [h]owever that's accomplished, whether turning around a plane or not

3

embarking anyone [in the class] on the plane[.]" *Id.* at 43. The court then repeated its pledge to "issue a minute order memorializing all of this." *Id.* at 46.

Shortly after, at 7:25 PM, the court issued a minute order provisionally certifying a class and enjoining the Government "from removing members of such class (not otherwise subject to removal) pursuant to the Proclamation for 14 days or until further Order of the Court." Op.6. As memorialized, the order did *not* direct the Government to turn around planes or to return already-removed aliens.

Two AEA flights had left the United States before that order, and even before the court's oral statements. Op.6; ECF 81 at 8-9. After the court's written order, AEA detainees on those flights were transferred to the custody of El Salvador. *Id.*

**2.** The Government appealed both orders and sought stays pending appeal. Ultimately, the Supreme Court vacated the TROs, holding that the district court lacked jurisdiction to issue them. *Trump v. J.G.G.,* 604 U.S. 670, 672 (Apr. 7, 2025) (per curiam). Despite the Supreme Court vacatur, the district court "forged ahead," Op.7, to find probable cause that the Government committed criminal contempt. ECF 81. The court reasoned that its "written TRO and the oral command defining compliance were each sufficiently clear and specific in proscribing the handover of class members to Salvadoran officials"—though the TRO said nothing of the sort. *Id.* at 31. The court characterized the Government's reading of the TRO as "clever" and admitted its consistency with "dictionary definitions," but still rejected it,

4

reasoning that the Government should have understood the written order as incorporating the desires that the judge had expressed orally. *Id.* at 24.

The court offered the Government a choice: either "purge its contempt" within 7 days "by asserting custody of the individuals who were removed in violation of the Court's classwide TRO," *i.e.*, taking custody from El Salvador; or else "identify[] the individual(s) who … made the decision not to halt the transfer of class members out of U.S. custody." *Id.* at 43-44. If the Government took the latter course, the court would "request that the contempt be prosecuted by an attorney for the government" or "appoint another attorney to prosecute the contempt." *Id.*; Op.7-8.

**3.** This Court granted a mandamus petition. *J.G.G.*, 147 F.4th at 1044 (per curiam). Judges Katsas and Rao wrote concurring opinions. Judge Katsas explained that the Government's interpretation of the TRO was correct and thus its conduct could not be contempt. *See id.* at 1051-57. Judge Rao reasoned that the "purge" option was unconstitutional, because contempt could not be used to enforce a vacated order, particularly to force diplomatic outreach in a way that impermissibly intrudes on Executive authority. *Id.* at 1065-70. Judge Pillard dissented. *Id.* at 1075-99. Plaintiffs then sought en banc rehearing, which this Court denied. Op.9.

**4.** Almost immediately—even before issuance of the mandate—the district judge made clear he would resume his inquiry. Op.9. The Government objected, but nonetheless disclosed that the official who had decided to continue the transfer

5

of custody was then-Secretary of Homeland Security Kristi Noem, after receiving privileged legal advice. ECF 195; Op.9.

The district court next ordered declarations from the officials involved in the decision. ECF 196. The Government complied, producing declarations from then-Secretary Noem, then-Acting DHS General Counsel Mazzara, and Deputy Attorney General Blanche. ECF 198. Judge Bove, who had been Principal Associate Deputy Attorney General at the time, also submitted his own declaration. ECF 199. All the declarants attested that Secretary Noem made the decision after her receipt of privileged legal advice from the other declarants. Op.9-10.

"At that point, the government had provided everything the district court had indicated was necessary for the court to make a criminal contempt referral." Op.10. Indeed, the court's prior contempt order had found probable cause on all elements of criminal contempt and merely sought the identities of the relevant officials to ensure that the right individuals were referred. But the district court "again moved the goalposts." Op.10. Now, the judge declared that he needed more information to determine whether the supposed violation had been "willful." ECF 200. But not from officials at DHS or the attorneys who advised the Secretary. Instead, the court ordered the Government to produce its litigation counsel in this case. *Id.* The court further directed Plaintiffs to secure the appearance of a former government attorney

6

who "[had] filed a whistleblower complaint" alleging misconduct by the Justice Department.  Op.10.

5.  The Government sought reconsideration or a protective order, explaining that no further evidence of "willfulness" was necessary or available absent a decision to waive the attorney-client privilege; that the order appeared to reflect retaliation for the Government's successful mandamus petition by seeking testimony that the court had not previously deemed necessary; that neither witness had any information relevant to the question at hand in all events, as neither had advised Secretary Noem; and that, at minimum, such testimony threatened the attorney-client privilege and thus should be strictly circumscribed with a protocol for resolving privilege disputes in an orderly fashion with a chance for appellate review.  ECF 201.  Plaintiffs opposed; they made clear they intended to elicit privileged information, but took the position that all such privileges had been waived or were vitiated by the "crime-fraud" exception.  ECF 205.  Their filing urged a wide-ranging inquiry beyond the contempt theory that the district court had articulated, making clear they contemplate an escalating series of inquests dedicated to identifying misconduct.  *Id.*  The district court rejected the Government's motion, and said it would evaluate privilege issues on the fly during a public hearing.  ECF 208.

6.  The Government again sought mandamus relief.  This Court again granted it.  Writing for the majority, Judge Rao explained that the TRO was "insufficiently

clear and specific to sustain a charge of criminal contempt"; that ordinary appellate review could not "adequately redress the harms created by the district court's unnecessary investigation"; and that mandamus was appropriate to avoid the inter-branch collision invited by this "improper inquest against the Executive." Op.13. Judge Walker concurred to emphasize the district court's oral statements making clear that its written order would control. Conc.1. Judge Childs dissented.

## ARGUMENT

En banc rehearing is disfavored and "rarely granted." D.C. Circuit Handbook of Practice and Internal Procedures 58 (2025). Indeed, this Court grants en banc review in only a handful of cases each year, and almost never to review case-specific applications of settled mandamus doctrine. Plaintiffs argue that en banc review is warranted because the decision presents "questions of exceptional importance[.]" Fed. R. App. P. 40(b)(2). But the panel merely held that, for reasons grounded in the unique factual and procedural history of this case, the standard for mandamus is satisfied. The panel was correct: The district court's criminal contempt inquiry was a "legal dead end," Op.28, and also unnecessary in light of the undisputed facts the Government had already presented under oath. Under those circumstances, putting lawyers on the stand for cross-examination as a way to probe the decisionmaking of senior Executive Branch officials on sensitive matters of national security was an abuse of discretion that demanded intervention before inter-branch tensions were

8

further inflamed. More importantly, disagreement on the merits of case-specific, fact-bound questions is not fodder for rehearing. Orders that have an "inability to create an enduring intracircuit conflict or to bind future panels" are especially unsuitable for en banc review. *Associated Press v. Budowich*, 2025 WL 2047025, at *2 (D.C. Cir. July 22, 2025) (Walker, J., concurring in denial of rehearing); *see also Lewis v. Becerra*, 2025 WL 37164, at *1, *3 (D.C. Cir. Jan. 7, 2025) (Pillard, J., concurring in denial of rehearing) (agreeing that panel opinion "may have little precedential effect"). This Court should therefore deny the petition.

## I.    The Panel Decision Does Not Warrant Rehearing En Banc.

Plaintiffs do not contend that the panel misstated the standard for mandamus relief. Instead, they argue that the panel misapplied that standard to the facts of this case. They are wrong but, regardless, such a misapplication of law to fact does not justify rehearing, especially when the facts are highly unique and will not recur. As Judge Walker noted, "the consequences of today's decision for any future cases" are "none." Conc.10. That compels denial of this petition.[1]

---

[1] At the outset, Plaintiffs lack standing to seek rehearing en banc. Criminal contempt is "punitive and imposed to vindicate the authority of the court[,]" not to ensure compliance. *United States v. Perry*, 116 F.3d 952, 956 (1st Cir. 1997). Because the district court issued a show cause order on criminal contempt to vindicate its own authority, Plaintiffs lack standing to affirmatively seek rehearing en banc. *See Ramos Colon v. U.S. Att'y for Dist. of P.R.*, 576 F.2d 1, 5 (1st Cir. 1978) ("A party to the original litigation has no standing to prosecute an action for criminal contempt or to take an appeal from the court's rejection of his allegations[.]"); *Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000).

**A.**    The first prong of the mandamus standard asks whether the petitioner has a clear and indisputable right to relief.  The panel answered in the affirmative, because the injunction "did not clearly or specifically prohibit" the Government's conduct, and thus it "cannot support the ongoing criminal contempt investigation." Op.21-22.  That conclusion was correct.  Plaintiffs barely engage with the panel's careful analysis of the TRO's text and multiple other indicators that it restricted only *territorial* removal, not transfers of *custody*.  *See* Op.22-28; *see also J.G.G.*, 147 F.4th at 1051-57 (Katsas, J., concurring) (similar analysis).

Instead, Plaintiffs blame the Government for not psychoanalyzing the district judge to ask "why" he "would have been concerned only with" territorial removal. Pet.6.  But it is "settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done."  *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974). Whether the court might have preferred to issue a broader injunction is not relevant. In all events, it is obvious why the district court might have limited the injunction to removals from U.S. territory—ordering *return* of dangerous aliens *outside the country* is a far more aggressive extraterritorial remedy than merely preserving the status quo.  That is why the district judge himself mused that once the aliens "are out of the country, I'm not sure what I can do there."  Op.27-28.

10

Plaintiffs also focus on the judge's oral statements. Pet.7-9. But by reassuring counsel that they need not rush to write down those remarks because he would memorialize the order in writing, the court made clear that the written order would govern. "[T]hat instruction makes sense only if the written minute order could be expected to say everything necessary." Conc.7 (Walker, J.). It is far from clear that oral orders can ever be enforceable by contempt, *see Bates v. Johnson*, 901 F.2d 1424, 1427 (7th Cir. 1990) ("Oral statements are not injunctions."), but here the court left no doubt that the written TRO was intended to control, and even Plaintiffs do not seriously contend that there was any violation of that written order.

Plaintiffs also try to argue that the phrase "As discussed in today's hearing" incorporated any oral statements into the order. Pet.9. But that cannot plausibly incorporate every discussion from the hearing, especially when the court made clear a written order would follow so the parties "don't have to race to write it down" (ECF 20 at 42) and the transcript was not available at the time.

Finally, Plaintiffs argue that "DOJ counsel on the case" understood what the district judge supposedly intended. Pet.9-11. Ensign, however, acknowledged only that he understood the judge "meant" his oral directives "to be effective at that time." ECF 51 at 6. Again, the key point is that the written order then superseded and used narrower language. *See PlayMakers LLC v. ESPN, Inc.*, 376 F.3d 894, 897 (9th Cir. 2004). As to the self-described "whistleblower," the Government will not respond

11

to privileged communications that have been improperly leaked.  In all events, neither of these lawyers advised Secretary Noem about the scope of the order, and their subjective beliefs are irrelevant.  *See United States v. Young*, 107 F.3d 903, 907 (D.C. Cir. 1997) ("we apply an objective standard").

**B.**    The second element of mandamus is whether the Government has "no other adequate means to obtain the relief it seeks."  Op.13.  As the panel correctly concluded, that element was satisfied here too.  The harm here is forcing government officials—a growing list of them, as the court "continues to expand the scope of its investigation," Op.16—to testify about internal deliberations on sensitive matters, subject to cross-examination by opposing counsel.  The severe separation-of-powers harms flowing from this "open-ended, freewheeling inquiry into Executive Branch decisionmaking on matters of national security that implicate ongoing military and diplomatic initiatives … cannot be remedied by a later appeal."  Op.17.

Plaintiffs respond that there will be review "*if* the district were to find probable cause that any individual committed criminal contempt, and *if* there were a referral, and *if* there were a conviction."  Pet.11.  The harms to the Executive Branch and its prerogatives, however, will be suffered even if none of those things transpires—that is the whole reason for mandamus relief.  *See, e.g.*, *Cheney v. U.S. Dist. Court for the D.C.*, 542 U.S. 367, 385 (2004); *Cobell v. Norton*, 334 F.3d 1128, 1139-40 (D.C. Cir. 2003); *In re United States*, 398 F.3d 615, 620 (7th Cir. 2005) (per curiam).

Moreover, as the panel noted, the separation-of-powers harms are "amplified" because "the burden imposed by these hearings is wholly unnecessary for making a referral for criminal contempt." Op.18. Indeed, the district court had previously found probable cause without any testimony, and needed only the identity of the decisionmaker to proceed. *Id.* The Government provided it in sworn declarations. *Id.* Plaintiffs respond that the declarations did not provide information on whether there was a "*willful* violation." Pet.13. There is no need to probe scienter simply to make a *referral*; if an official were to be prosecuted, that official could invoke advice of counsel and waive the privilege—but there is no precedent for that happening through a wide-ranging pre-referral inquisition. *Cf.* Fed. R. Crim. P. 42(b). The "complete irrelevance" of the testimony exacerbates the "burden" and underscores the propriety of mandamus relief. *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020).

**C.** The final mandamus element asks whether the writ is appropriate under the circumstances. The panel appreciated that "mandamus must be reserved for extraordinary circumstances," but concluded that the district court's "widening and unnecessary inquiry into Executive Branch decisionmaking, conducted on the erroneous premise that the TRO is sufficiently clear and specific, is at least a clear abuse of discretion[,]" and posed a serious threat to the separation of powers both by "interfer[ing] with the Executive Branch's conduct of its internal affairs" and by "encroaching on the prosecutorial role." Op.29-30.

13

For their part, Plaintiffs argue that the panel should have given weight to their allegations of Executive Branch misconduct and a "disrespectful" statement from the Secretary of State. Pet.15-16. But those allegations are misdirected and, in any event, far afield from the question of compliance with the TRO.

**D.** Even if a majority of the Court disagrees with any piece of the analysis above, none of it warrants en banc review. A merits dispute over how to construe the district court's injunction in light of his oral statements in this unique factual context has no prospective significance beyond this case. Nor does a difference of opinion over whether the burden here was sufficiently serious—and the benefits of the testimony sufficiently marginal—to make mandamus proper. And, of course, a concededly "discretionary" exercise of authority, Pet.15, almost by definition does not justify the rare and disfavored step of rehearing en banc.

Plaintiffs claim the decision "provides a blueprint for the Executive Branch" to "escape scrutiny" and "ignore a judicial order." Pet.16. Not at all. Courts have ample mechanisms for enforcing their orders. *Ramos Colon*, 576 F.2d at 5. Here, because the TROs were vacated, criminal contempt was the only option. And the limits on criminal contempt are well-established; the panel here simply applied them. The panel's application of unquestioned propositions of law to this messy, unique set of facts has no implications "beyond this case," Pet.2.

14

II.  **Rehearing Would Accomplish Nothing While Inflaming Inter-Branch Tensions and Requiring Resolution of a Host of Alternative Grounds.**

For the reasons above, this decision does not meet this Court's standards for rehearing en banc.  There are three additional reasons why the Court should decline to grant rehearing.

*First*, doing so would not result in any viable criminal contempt charge.  Since three judges of this Court have concluded that the injunction did not prohibit the Government's conduct, rehearing would change nothing.  *See* Op.28 (Rao, J.); Conc.8 (Walker, J.); *J.G.G.*, 147 F.4th at 1051-57 (Katsas, J., concurring).  Even if the full Court disagrees with that interpretation, there is no way that an interpretation adopted by three members of this Court after careful consideration could be so plainly wrong as to constitute criminal contempt.  *See Joyce*, 498 F.2d at 596 (order must be "clear and decisive and contains no doubt about what it requires").

*Second*, insofar as the Court is concerned about vindicating the rights of the detainees, the district court has separately granted them relief; the Government has appealed from that order.  *J.G.G. v. Trump,* No. 26-5074 (D.C. Circuit).  Moreover, at least one detainee has also filed a Federal Tort Claims Act lawsuit.  *See Rengel v. United States*, No. 26-cv-01008 (D.D.C. Mar. 24, 2026).  Those cases are where the rights of the aliens, if any, will be addressed.

*Third*, granting rehearing would require the en banc Court to consider a host of other grounds for mandamus that the panel did not confront.  For one, criminal

15

contempt cannot lie if the court lacked jurisdiction to enter the original order. *See Ex parte Fisk*, 113 U.S. 713, 714 (1885). For another, the district court's sweeping inquiry intrudes on core Executive functions to investigate and prosecute crimes. *See United States v. Texas*, 599 U.S. 670, 679 (2023). For a third, the government lawyers called to the stand have no information on the decisionmakers' *mens rea*. ECF 200; ECF 201-1. For a fourth, the court's inquest threatened the attorney-client privilege, especially given the court's indication that it might vitiate the privilege without briefing, during a public hearing, with zero procedural protections. ECF 208. That alone justifies mandamus. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 756 (D.C. Cir. 2014).

In short, rehearing would reopen a Pandora's Box of difficult questions and searing inter-branch conflict without accomplishing anything in practice. The Court should therefore deny the petition.

## CONCLUSION

The Court should deny the petition for en banc rehearing.

Dated: May 22, 2026

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney*
    *General*

 *s/ Tiberius Davis*
TIBERIUS DAVIS
   *Counsel to the Assistant Attorney*
    *General*
   Civil Division
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202)-860-8970

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the applicable type-volume limit because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,891 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word for Microsoft 365 MSO (Version 2509 Build 16.0.19231.20138) 64-bit.

Dated: May 22, 2026                    *s/ Tiberius Davis*
                                       TIBERIUS DAVIS

**CERTIFICATE OF SERVICE**

I certify that on May 22, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system.  I certify that Plaintiffs' attorneys are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Tiberius T. Davis*
TIBERIUS T. DAVIS